# In the United States Court of Federal Claims

No. 18-846C (BID PROTEST)
(Filed Under Seal: June 19, 2018 | Reissued June 22, 2018)[*]

|  |  |
|---|---|
| SVD STARS II, LLC, ) <br> ) <br>         Plaintiff, ) <br> ) <br>   v. ) <br> ) <br> THE UNITED STATES OF AMERICA, ) <br> ) <br>         Defendant, ) <br> ) <br>   and ) <br> ) <br> 22ND CENTURY TECHNOLOGIES, ) <br> INC., ) <br> ) <br>         Defendant-Intervenor. ) <br> ) | Keywords: Bid Protest; Temporary Restraining Order; Preliminary Injunction; Competition in Contracting Act; De Facto Override of Stay; 31 U.S.C. § 3553. |

*Holly A. Roth*, Reed Smith LLP, McLean, VA, for Plaintiff, with whom were *Lawrence Block*, *Stacey Forbes*, and *Jonathan Davey*, Reed Smith LLP.

*Kara M. Westercamp*, Civil Division, U.S. Department of Justice, for Defendant, with whom were *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General. *C. Clay Weisenberger*, Counsel, U.S. Army Engineering & Support Center, Of Counsel.

*Matthew T. Schoonover*, Koprince Law LLC, Lawrence, KS, for Defendant-Intervenor.

**OPINION AND ORDER**

**KAPLAN, Judge.**

In this bid protest, Plaintiff SVD Stars II, LLC (SVD) claims that the U.S. Army unlawfully overrode a CICA stay when it awarded a short-term task order to Defendant-Intervenor 22nd Century Technologies, Inc. (22nd Century). Under the task order, 22nd Century will perform certain information technology (IT) services during the pendency of a GAO protest,

---

[*] This Opinion and Order was originally issued under seal, and the parties were given the opportunity to request redactions. Neither party requested redactions, and the Court is now reissuing the Opinion and Order in full.

also filed by SVD, which concerns a longer-term task order the Army recently awarded to 22nd Century. In this action, SVD claims that by awarding the short-term task order to 22nd Century, the Army effected a de facto override of the automatic stay that went into place when SVD protested the longer-term task order at GAO, and that the Army failed to comply with the statutory requirements for overriding the automatic stay.

Along with its complaint, SVD has filed a motion for emergency declaratory relief and/or a TRO and preliminary injunction. The government has filed an opposition to SVD's motion.

On June 15, 2018, the Court issued a brief order denying SVD's motion for a TRO, noting that it would fully explain its reasoning in a subsequent opinion. In addition, and also for the reasons discussed below, SVD's motion for a preliminary injunction is **DENIED**.

## BACKGROUND[1]

The U.S. General Services Administration (GSA) has implemented a government-wide contract vehicle through which agencies may rapidly procure IT and related services from section 8(a)-certified small businesses via task order. See Compl. ¶ 1, ECF No. 1. This contract vehicle is known as the 8(a) Stars II government-wide acquisition contract (Stars II GWAC). See id.

It is the Court's understanding that a contractor wishing to receive task orders under the Stars II GWAC must first obtain a Stars II contract from GSA, after which it is placed into a "pool" of eligible contractors. See id. ¶ 9. Eligible contractors then compete for task orders as they are issued by procuring agencies. See id.

In this case, the procuring agency is the U.S. Army, which requires IT and Information Management (IM) services at the Fort Belvoir Community Hospital in Fort Belvoir, Virginia. See id. ¶ 12. SVD has been providing such services to the Army under a Stars II task order since July 2016. See id. At the status conference, counsel represented that the time period covered by SVD's existing task order has expired. See Status Conf. at 3:03:30–40 p.m. (June 14, 2018).

Anticipating the expiration of the legacy task order, the Army issued a new task order covering a somewhat different set of IT services.[2] See Compl. ¶ 2; see also Status Conf. at 3:17:05–3:18:02 p.m.; CO's Decl. ¶ 12. On or about May 25, 2018, the Army awarded this task order (hereinafter, the "May 25 task order") to 22nd Century. See Compl. ¶ 2. On June 4, SVD filed a protest of the May 25 task order at GAO. Id. This filing "triggered the automatic stay of performance required under the Competition in Contracting Act ('CICA'), 31 U.S.C.

---

[1] The facts set forth below are based on the allegations in Plaintiff's complaint and the representations made by counsel during a status conference held on June 14, 2018, as well as portions of the contracting officer's (CO) declaration (ECF No. 14-1) that appear undisputed.

[2] In particular, counsel for the government represented that under the legacy task order, SVD had been providing SharePoint services, but that SharePoint services are not included in the task orders at issue in this case. See Status Conf. at 3:17:05–3:18:02 p.m.; see also Decl. of Margaret C. Maine (CO's Decl.) ¶ 12.

§ 3553(d)(3)." Id.; see also CO's Decl. ¶ 5 (stating that the CO "issued a stop work order" on the May 25 task order the day she received notice of the GAO protest).

About two weeks later, on June 12, an Army CO informed SVD that the Army had awarded a separate task order (hereinafter, the "June 12 task order") to 22nd Century as a direct award. See Compl. ¶ 4. The purpose of the June 12 task order was to obtain the IT and IM services the Army requires while the GAO protest unfolds, since performance on the May 25 task order is stayed pursuant to CICA. See id.; CO's Decl. ¶ 6. In other words, the June 12 task order is a "bridge contract" intended to last the duration of the GAO protest. See Compl. ¶ 19. SVD alleges that 22nd Century has "contacted various [of its] employees for employment" and that the CO has advised SVD that the "[g]overnment expects [that] SVD will coordinate with 22nd Century . . . on transition." Id. ¶¶ 17–18 (quotation and alterations omitted).

In its complaint, SVD alleges that the June 12 task order constitutes a "de facto override of the CICA . . . stay" because "[b]ut for the period of performance and the dollar value, the [June 12] [t]ask [o]rder is for the same services as required under the [May 25] [t]ask [o]rder." Id. ¶ 5. And it contends that the Army has "fail[ed] to make any finding as to the necessity of an override" and "fail[ed] to notify SVD or . . . the GAO of such an override," as is required under CICA. Id. ¶ 6 (citing 31 U.S.C. § 3553(d)(3), 4 C.F.R. § 21.6, and FAR 33.104(c)(3), (d)).

Based on these allegations, SVD filed a motion for emergency declaratory relief and/or a temporary restraining order and preliminary injunction along with its complaint. See Pl.'s Mot. for Emergency Declaratory Relief, TRO and/or Prelim. Inj. (Pl.'s Mot.), ECF No. 5.

## DISCUSSION[3]

### I. Standards for Issuing a TRO and/or Preliminary Injunction

A temporary restraining order is an "extraordinary and drastic remedy . . . that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Jones Automation, Inc. v. United States, 92 Fed. Cl. 368, 370 (2010) (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). Further, the standards for determining whether to grant a temporary restraining order and for granting a motion for a preliminary injunction are aligned. In either case, the moving party must demonstrate that: (1) it is likely to ultimately succeed on the merits of its claims; (2) it will be irreparably harmed without injunctive relief; (3) the balance of hardships tips in its favor; and (4) the public interest favors the grant of injunctive relief. Am. Signature, Inc. v. United States, 598 F.3d 816, 823 (Fed. Cir. 2010) (citing Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 19 (2008)); see also Erico Int'l Corp. v. Vutec Corp., 516 F.3d 1350, 1353–54 (Fed. Cir. 2008) (discussing injunctive relief in a patent context); FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993). "No single factor is determinative, and 'the weakness of the showing regarding one factor may be overborne by the strength of the others.'" Contracting Consulting Eng'g LLC v. United States, 103 Fed. Cl. 706, 709 (2012) (quoting FMC

---

[3] "This Court has jurisdiction to review an agency decision to override an automatic stay." PGBA, LLC v. United States, 60 Fed. Cl. 196, 202 n.9 (citing RAMCOR Servs. Group, Inc. v. United States, 185 F.3d 1286, 1291 (Fed. Cir. 1999)), affirmed, 389 F.3d 1219 (Fed. Cir. 2004).

Corp., 3 F.3d at 427). At the same time, "the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify . . . denial" of a preliminary injunction or temporary restraining order. See Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc., 908 F.2d 951, 953 (Fed. Cir. 1990).

**II.     Application to This Case**

The Court concludes that emergency and/or preliminary injunctive relief is not warranted in this case. Most pertinently, SVD is not likely to succeed on the merits of its claim because the premise of its legal theory—that the June 12 task order constitutes a de facto override of the CICA stay—is flawed and unsupported. The remaining factors likewise do not break in SVD's favor.

   **A.     Chance of Success on the Merits**

First, SVD has not shown that it is likely to succeed on the merits of its claim. This is so because an agency's decision to obtain a bridge contract during a CICA stay does not ordinarily constitute the functional equivalent of a stay override. See Carahsoft Tech. Corp. v. United States, 86 Fed. Cl. 325, 346–47 (2009); Access Sys., Inc. v. United States, 84 Fed. Cl. 241, 243 (2008). Thus, a stay override may prejudice the protester with respect to the protested contract because by the time the GAO reviews the protest, it may have become "too costly to undo the contract and award the contract to a successful bid protester." See Lear Siegler, Inc., Energy Prods. Div. v. Lehman, 842 F.2d 1102, 1111 (9th Cir. 1988), withdrawn in part, 893 F.2d 205 (9th Cir. 1989) (en banc); see also Carahsoft, 86 Fed. Cl. at 346–47 (observing that absent a stay, the procuring agency may be more likely to "disregard the [GAO's] recommendations to cancel the challenged award"). In contrast, when the agency issues a bridge contract, the protester generally is not "prejudice[d] . . . in its protest . . . or in subsequently performing the work if it is successful in its protest," because "if [the] plaintiff is successful at the GAO, the original contract, in its entirety, will still be available." Access Systems, 84 Fed. Cl. at 243.

Access Systems presented facts nearly identical to those at issue here. In that case, an agency seeking IT services awarded a 120-day bridge contract to a contract awardee after a disappointed offeror protested the contract award at GAO. See id. at 242. After reviewing evidence provided by the CO, Judge Bruggink held that even though the bridge contract covered "identical information technology services involved in the original contract," it did not work a de facto override of the CICA stay. Id. at 243. He so held because the bridge contract was "a separate, self-contained contract" whose "term [would] not lessen the amount of work" under the protested contract, and whose funding was likewise segregated from the protested contract's funding. Id. As Judge Bruggink observed, "[c]ontracts may share the same subject matter and yet remain separate and distinct from one another." Id. Given these differences, Judge Bruggink concluded that "the bridge contract d[id] not disturb the status quo with respect to the original contract," and thus that "the character of the bridge contract [wa]s distinctly different from an override." Id.[4]

---

[4] See also Carahsoft, 86 Fed. Cl. at 347 (observing that the Court of Federal Claims "has encouraged and approved bridge contract awards as an alternative to a formal override where the

SVD offers no persuasive rebuttal to the logic of Access Systems. Rather, the gravamen of its position appears to be that if an agency awards a bridge contract during a GAO protest, the status quo may only be preserved by awarding the bridge contract to the incumbent. See Pl.'s Mot. at 8–9; Status Conf. at 3:11:30–3:12:50 p.m. The CICA stay, however, is not intended to freeze an incumbent's status while GAO processes a protest. Rather, the stay preserves the status quo with respect to the awarded contract, on the reasoning that—with the contract on hold as awarded but unperformed—the agency is more likely to heed GAO's recommendations if GAO finds fault with the award.[5] See Carahsoft, 86 Fed. Cl. at 347; Access Systems, 84 Fed. Cl. at 242.

In short, the direct award of the June 12 task order to 22nd Century does not share the relevant features of an override of the CICA stay with respect to the protested contract. It therefore cannot be considered the functional equivalent of an override, such that the Army would have needed to comply with CICA's stay override requirements when issuing it. Accordingly, SVD has not demonstrated that it is likely to succeed on the merits of this protest.

### B.    Irreparable Injury

The Court also is not persuaded that, absent a TRO or preliminary injunction, SVD "will suffer irreparable harm before a decision can be rendered on the merits." See OAO Corp. v. United States, 49 Fed. Cl. 478, 480 (2001). SVD claims that 22nd Century's performance of the June 12 task order "threatens SVD's ability to maintain its highly skilled staff" and may cause it to "suffer competitive injury because 22nd Century will be able to obtain valuable experience performing under the Second Task Order, reducing SVD's current competitive advantage." Pl.'s Mot. at 10.

But the loss of personnel by an incumbent contractor generally does not constitute irreparable injury, especially when it appears likely that the contractor may re-hire those employees if it successfully re-competes for the contract. See, e.g., Munilla Constr. Mgmt., LLC v. United States, 130 Fed. Cl. 131, 137 (2016); Eskridge Research Corp. v. United States, 92 Fed. Cl. 88, 99 (2010) (stating that "the decision of [the incumbent-protester's] employe[e]s to work for [the awardee] is not the kind of injury that constitutes irreparable harm"); Comput. Scis. Corp. v. United States, 51 Fed. Cl. 297, 323 n.91 (2002) ("[A] potential loss of employees is not an irreparable harm."). Indeed, as Judge Lettow observed, were the loss of employees sufficient

---

bridge contract . . . maintains the status quo during the pendency of the protest"); cf. Bannum Inc. v. United States, 121 Fed. Cl. 543, 550–51 (2015) (no de facto override where agency used existing contracts with contract awardee to meets its needs during GAO protest of a new contract for similar services).

[5] E-Management Consultants, Inc. v. United States, 84 Fed. Cl. 1 (2008), which Plaintiff cited at the status conference, is not on point. In that case, the agency expressly overrode the stay. See id. at 2–3. Thus, the question in that case was whether the agency's decision to override the stay was arbitrary and capricious while the question in this case is whether the agency overrode the stay at all. See id. at 6–7.

to establish irreparable injury, courts would have to "consider any incumbent contractor's loss of a successor contract to be [an] irreparable harm." PGBA, LLC, 60 Fed. Cl. at 221.

Further, SVD's contention that its competitive advantage will be reduced is speculative and thus "does not demonstrate irreparable harm," especially considering that to become eligible to compete for task orders on the Stars II GWAC in the first place, both SVD and 22nd Century had to demonstrate certain baseline competencies to the GSA. See Sierra Military Health Servs., Inc. v. United States, 58 Fed. Cl. 573, 582 (2003) (finding that any "incumbency advantage" would not "suffer to an irreparable level" where incumbent and awardee already had similar competencies). For these reasons, SVD's claims of irreparable harm lack merit.

### C. The Balance of Hardships and the Public Interest

The Court concludes that the final two factors also do not weigh in favor of granting injunctive relief. As noted, the extent to which SVD will suffer any hardship is speculative. On the other hand, the government has represented that extending SVD's legacy task order or issuing a bridge contract to SVD during the GAO protest would be significantly more costly than awarding the bridge contract to 22nd Century, and could also result in duplicative payments for SharePoint support services. See Status Conf. at 3:06:45–3:07:55 p.m.; id. at 3:17:05–3:18:02 p.m.; CO's Decl. ¶ 9. Further, as discussed, SVD has not shown that it is likely to succeed on the merits such that the public interest in the integrity of the contracting process would be impaired absent an injunction. These factors therefore do not favor the issuance of a TRO or preliminary injunction.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

In summary, none of the factors indicate that emergency declaratory or preliminary injunctive relief should be entered in this case. Accordingly, SVD's motion is **DENIED**.

### CONCLUSION

For the reasons discussed above, SVD's motion for emergency declaratory relief and/or a TRO and preliminary injunction is **DENIED**.

Further, by **Friday, June 22, 2018**, the parties shall jointly propose a schedule for any further proceedings in this case.

**IT IS SO ORDERED.**

                                                        s/ Elaine D. Kaplan
                                                       ELAINE D. KAPLAN
                                                       Judge